```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

LEGIER & COMPANY, APAC        *          CIVIL ACTION

VERSUS                        *          NO: 09-6674

THE TRAVELERS INDEMNITY       *          SECTION: "D"(3)
COMPANY OF CONNECTICUT
```

**ORDER AND REASONS**

Before the court are the following motions which were set for hearing on Wednesday, April 21, 2010:

(1) **"Motion for Partial Summary Judgment"** (Doc. No. 15) filed by Plaintiff, Legier & Company, apac (Legier); and

(2) **"Motion for Partial Summary Judgment"** (Doc. No. 16) filed by Defendant, The Travelers Indemnity Company of Connecticut (Travelers).

In these motions, the parties seek a determination of the proper methodology to calculate loss of business income in connection with claims for loss of business income made by Legier under an insurance policy issued by Travelers. Both motions, which are respectively opposed, are before the court on briefs, without oral argument. Now, having considered the memoranda of counsel,

the record, and the applicable law, the court rules.

Travelers issued to Legier, an accounting business with offices located in the Entergy Centre, 100 Poydras Street, Suite 3400, New Orleans, Louisiana), a businessowners property insurance policy which provided for loss of business income. Pursuant to this policy, Legier made two claims for loss of business income resulting from two incidents: (1) Legier's evacuation of the city of New Orleans under a mandatory evacuation order related to Hurricane Gustav; and (2) during this evacuation, a hot water heater had burst causing damages to the premises leased by Legier. During both of these claimed losses, Legier purportedly operated and generated income, but at a reduced level of income.

The policy does not prescribe an explicit formula to calculate loss of business income, and Legier and Travelers dispute the methodology that should be used to calculate loss of business income. In determining the proper methodology to make such a calculation, the court finds that portions of the policy are pertinent. The Declarations of the subject policy limits business income to "**Actual loss** subject to a maximum limit of $500,000." (*See* Policy, Dec. page, emphasis added). The policy itself provides:

    A.    COVERAGE

                  ...

3.  **Business Income and Extra Income**

    ...

    a.  **Business Income**

    (1) Business Income means:

        (a) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred, including:

            (I) "Rental Value"; and

            (ii) "Maintenance Fees", if you are a condominium association; and

        (b) Continuing normal operating expenses incurred, including payroll.

    (2) We will pay for the **actual loss** of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

(*See* Policy, §(A)(3)(a) at p. 2 of 39, emphasis added).

The Policy also provides:

E.  **PROPERTY LOSS CONDITIONS**

    ...

    5.  **Loss Payment-Business Income and Extra Expense**

        a.  The amount of Business Income loss will

3

be determined based on:

(1) The Net Income of the business before the direct physical loss or damage occurred;

(2) The likely Net Income of the business if no physical loss or damage occurred, but not including any likely increase in Net Income attributable to an increase in the volume of business as a result of favorable business conditions caused by the impact of the Covered Cause of loss on customers or on other businesses;

(3) The operating expenses, including payroll expenses, necessary to resume "operations" with the same quality of service that existed just before the direct physical loss or damage ...

c. We will reduce the amount of your:

(1) Business income loss ... to the extent you can resume your "operations", in whole or in part, by using damaged or undamaged property ... at the described premises or elsewhere ...

(*See* Policy, §(E)(5) at p. 31 of 39).

Finally, the "Business Income and Extra Expense-Policy Level Dollar Limit Endorsement" provides: "**Actual loss** up to a maximum dollar limit, then we will pay for loss of Business an Extra Expense up to the limit shown in any one occurrence." (*See* Policy, Business Income and Extra Expense-Policy Level Dollar Limit

4

Endorsement, emphasis added).

Based on the initial report generated by Travelers' retained accountant, Jeff Smith of Assurance Forensic Accounting, Travelers paid Legier $32,839.00 on its business income claim resulting from Legier's mandatory evacuation of the city. However, based on a supplemental report issued by Assurance, Travelers claims that Legier sustained an actual loss in the lesser amount of $16,676, as opposed to the previously calculated sum of $32,839. Thus, Travelers maintains that it has overpaid Legier on its first business income claim resulting from the mandatory evacuation. On Legier's second business income claim based on the bursting of a hot water heater and resulting water damage, Travelers paid Legier $61,196 (again based on the reports of Assurance). On both claims, Travelers determined that Legier had incurred less continuing operating expenses that what had been projected had there been no loss and used the following formula to calculate loss of business income: "projected net revenue minus the actual revenue" minus the operating expense savings.[1]

---

[1] The court notes that the same figure of $61,196 is obtained in Legier's Ex. 3 (Doc. No. 15-6) which sets forth a side by side comparison of the methodologies used by Travelers and Legier. Legier sets forth Travelers' formula as: (Projected Revenue minus Total Projected Operating Expenses) plus (Actual Continuing Expenses) minus (Actual Revenue earned).

Legier sets forth the same Travelers' formula for the mandatory evacuation claim, showing a loss of business income in the amount of $32,839. This is the amount Travelers actually paid Legier, but as discussed above, Travelers now maintains that it overpaid Legier and the correct amount is $16,676.

In addition to disputing the dollar amounts arrived by Travelers, Legier argues that Travelers incorrectly reduced Legier's loss of Business Income by "actual revenue earned," and the appropriate method for calculating its loss of business income is to add: (a) its Net Income (net profit or loss before income taxes) that would have been earned or incurred if no physical loss or damage occurred <u>and</u> (b) its continuing normal operating expenses incurred, including payroll expenses.  Using this methodology, Legier submits that its loss of business income for the mandatory evacuation is $40,373, and its loss if income for the water damage claim is $793,997.  (*See* Legier's Ex. 3, Doc No. 15-6).  Legier does not deny that it would receive a windfall if the Net Income method is used, but maintains that the amounts its seeks are the amounts it is entitled to receive under the policy.  (Plaintiff's Sur-Reply, Doc. No. 33-2, p. 2).

Reading the provisions of the policy (as cited above) so that each is given the meaning suggested by the policy as a whole, the court concludes that the policy was designed to pay Legier for its "actual loss" of business income, not to place it in a better position than it would have been if no loss or interruption of business had occurred.  Legier is only entitled to net income and continuing normal operating expenses incurred (including payroll) to the extent that they are components of "the actual loss of

6

Business Income."  Thus, Travelers has no obligation to pay Legier for its continuing operating expenses when it did not sustain an actual loss entitling it to payment of those expenses.  As to both of its claims, Legier generated actual revenue to offset its continuing operating expenses and it is not entitled to recoup its operating expenses on top of its shortfall of projected revenue. Legier's Business Income losses must be reduced by the actual revenue it earned during the two loss periods at issue.  Thus, the appropriate formula for "actual loss of business income" under the subject policy is: **(projected net income minus total projected operating expenses) plus (actual continuing normal operating expenses (including payroll)) minus gross profits actually earned.**[2]

Accordingly;

**IT IS ORDERED** that Travelers' **"Motion for Partial Summary Judgment"** (Doc. No. 16) be and is hereby **GRANTED** as to the method used to calculate Legier's business income loss, and Legier's **"Motion for Partial Summary Judgment"** (Doc. No. 15) to the contrary be and is hereby **DENIED.**  The actual damage figure as to each claim is still disputed.

---

[2] While the court recognizes that the *Polymer Plastics Corporation v. Hartford Casualty Ins. Co.* decision by the United States District Court of Nevada in September 2006, Docket No. 05:143, is not binding on this court, the court finds that the reasoning set forth in that decision is persuasive. (*See* copy of *Poylmer* attached to Defendant's Opp. as Ex. A, Doc. No. 29-1).  Similarly, the court finds that the reasoning set forth in *National Union Fire Ins. Co. v. Anderson-Prichard Oil Corp.*, 141 F.2d 443 (10th Cir. 1944) is persuasive.

New Orleans, Louisiana, this **28th** day of **April**, **2010**.

                                          _____
                                             A.J. McNAMARA
                                     UNITED STATES DISTRICT JUDGE